UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WYTISHA R. STROMAN,

    Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action No. 18-12886

HON. LINDA V. PARKER
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

_____/

## REPORT AND RECOMMENDATION

Plaintiff Wytisha R. Stroman ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #19] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #16] be DENIED.

## PROCEDURAL HISTORY

On May 15, 2015, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of June 4, 2014 (Tr. 202, 205). After the initial denial of her claim, Plaintiff requested an administrative hearing, held on June 1, 2017 in Livonia, Michigan before

Administrative Law Judge ("ALJ") Martha M. Gasparovich (Tr. 55). Plaintiff, represented by attorney Barry Keller, testified (Tr. 66-75), as did Vocational Expert ("VE") Diane Regan (Tr. 75-81). Plaintiff's husband, Eugene Stroman also testified (Tr. 60-66). On August 28, 2017, ALJ Gasparovich found that Plaintiff was not disabled (Tr. 10-20). On August 29, 2017, the Appeals Council denied review (Tr. 1-3). On September, 14, 2018, Plaintiff filed for judicial review of the Commissioner's final decision in this Court.

## BACKGROUND FACTS

Plaintiff, born June 7, 1975, was 42 when the ALJ issued her decision (Tr. 20, 202). She completed three years of college, received certification for driving a bus, and worked previously as a bus driver (Tr. 241-242). She alleges disability resulting from the condition of trigger finger (Tr. 240).

### A. Hearing Testimony

#### 1. Plaintiff's Husband, Eugene Stroman

Plaintiff's husband offered the following testimony:

He and Plaintiff had been married for 14 years (Tr. 60). He performed all of the household chores with the help of Plaintiff's family (Tr. 60-61). Plaintiff experienced limitations in both hands due to Carpal Tunnel Syndrome ("CTS") brought about by years of driving a bus (Tr. 61). The witness acknowledged that Plaintiff had surgery on only one hand (Tr. 61). Plaintiff could dress herself with clothes that did not require buttons, hooks, or zippers (Tr. 61-62). She was unable to fasten a dog leash (Tr. 62). Plaintiff spent her day teaching her children, reading to them, and taking them to the park (Tr. 63). Plaintiff was unable to grocery shop by herself due to pain from pushing a cart (Tr. 63). Plaintiff's husband had taken a second job to help the family since Plaintiff became unable to work (Tr. 65).

### 2. Plaintiff's Testimony

Plaintiff, 41, had not worked since 2013 (Tr. 67). She was dismissed from the bus driving position because she could not close her hands around the steering wheel (Tr. 68). The left hand was worse than the right (Tr. 68). Four left hand surgeries made the condition worse (Tr. 68). She was unable to work due to constant pain despite taking medication three to four times a day (Tr. 69). The pain radiated from her left hand to her shoulder and sometimes effected her neck (Tr. 69). Her thumb and middle fingers sometimes "locked" (Tr. 69). Massage therapy had not improved the condition of her hand(s) (Tr. 69). She no longer took medication for depression which made her "incoherent" but instead talked to the pastor of her church for support (Tr. 70).

Plaintiff relied on her husband, brother, and mother to perform household chores and meal preparation (Tr. 71). Her mother helped her care for Plaintiff's three-year-old daughter (Tr. 71). Before her injury Plaintiff led an active lifestyle which included mentoring young women (Tr. 72-73). She underwent bariatric surgery in 2010 but had since gained all but 30 pounds back due to her inactive lifestyle (Tr. 72).

Plaintiff experienced the side effect of drowsiness from Norco (Tr. 74). She took daily naps (Tr. 74). Her Facebook activity was now limited to looking at things that her husband showed her (Tr. 75).

 **B.** **Medical Evidence[1]**

### 1. Treating Sources

May, 2014 records note a diagnosis of left trigger finger (Tr. 409, 481). The following month, Plaintiff underwent surgery for repair of the middle finger of the left hand

---

[1]Medical evidence predating the alleged onset of disability by more than one year, while reviewed in full, is not included in the present discussion.

(Tr. 411). July, 2014 emergency room records note that Plaintiff developed an infection after the June, 2014 surgery (Tr. 334). She underwent incision and drainage of the surgical site (Tr. 350). Physical therapy records from the same month state that Plaintiff ceased physical therapy for the hand condition to undergo the hand procedures (Tr. 316). Treating records from later the same month note that the infection was resolving with antibiotics (Tr. 417). Later the same month, hand surgeon Troy Williams, M.D. "question[ed] her overall effort and compliance at home with her range of motion exercises" (Tr. 460). Plaintiff reported level "one" pain on a scale of one to ten (Tr. 458). September, 2014 physical therapy records pertaining to Plaintiff's condition subsequent to the onset of the infection state that she was discharged after failing to show for several appointments and failing to follow through with a home exercise program (Tr. 437). September, 2014 records by Dr. Williams note his doubts regarding Plaintiff's "compliance at home with [] range of motion exercises" (Tr. 452). He found that Plaintiff had "no work restrictions" (Tr. 452).

In November and December, 2015, orthopedic surgeon Uzma Rehman, D.O. noted Plaintiff's report of "mild to moderate" interference with activities (Tr. 525, 557). She was advised to perform home exercises (Tr. 560). Plaintiff reported that she used pain relievers around three times a week "as needed" (Tr. 525). A December, 2015 MRI of the left hand showed a "[b]owstring appearance of the flexor digitorum tendon of the middle finger (Tr. 524). March, 2016 records by Dr. Rehman note no other current medical problems (Tr. 534, 555). Imaging studies of the thyroid from the following month were unremarkable (Tr. 547). April, 2017 treating records note Plaintiff's denial of problems with sleeping or fatigue (Tr. 573).

### 2. Non-Treating Sources

In August, 2015, Leonidas Rojas, M.D. performed a consultative physical examination

on behalf of the SSA, noting Plaintiff's report that the 2014 surgeries and a 2015 followup procedure made her left hand "worse" (Tr. 518). Plaintiff reported the inability to bend her left middle finger and the need for a brace or sling (Tr. 518). She stated that she was able to perform light household chores and care for her personal needs but did not drive (Tr. 518). Dr. Rojas observed that Plaintiff was unable to perform fine or gross manipulations with the left hand but could hold small weights and "paper between her [left] thumb and index finger" (Tr. 519). He diagnosed her with "uncorrected flexor contracture of the left mid finger [] with marked functional impairment of her left hand . . ." (Tr. 519).

In September, 2015, George Starrett, Ed.D. performed a non-examining review of the consultative and treating records on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and could perform unlimited pushing and pulling with the right upper extremity and both lower extremities (Tr. 89). He found that Plaintiff was precluded from crawling and the climbing of ladders, ropes, and scaffolds (Tr. 90-91). As to manipulative limitations, he found that Plaintiff was precluded from all handling on the left, and occasional fingering but had no right-sided limitations (Tr. 90). He noted that Plaintiff was able to take care of her small child with the help of family, drive, use a computer, and prepare simple meals (Tr. 86).

### C. Vocational Expert Testimony

VE Diane Regan classified Plaintiff's previous work as a bus driver as semiskilled at the medium exertional level[2] (Tr. 76). The ALJ then posed the following hypothetical

---

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with

question, taking into account Plaintiff's age, educational level, and work experience:

> Assume the individual would need a clean air environment, free from concentrated levels of dust, fumes, chemicals, gases, and other airborne irritants, could only use the left, non-dominant hand as an assist. No gripping, handling, or fingering with the left hand. Could such an individual perform the work you have described as [Plaintiff's] past work? (Tr. 76-77).

The VE testified that the above-described hypothetical individual would be unable to perform Plaintiff's past work but could perform the sedentary, unskilled work of an inspector (100,000 jobs in the national economy); sorter (100,000); and packer (80,000) as well as the exertionally light, unskilled work of a greeter (100,000), inspector (75,000), and sorter (50,000) (Tr. 77). She stated that the job numbers would not be affected by the need to avoid extremes of temperature, wetness, and humidity; avoidance of vibrations and hazards such as unprotected heights and open, moving machinery; or, a preclusion on forceful gripping or twisting with the dominant hand (Tr. 77-78). The VE testified further that if the individual were additionally limited to "no interaction with the public and occasional interaction with coworkers and supervisors" with an accompanying preclusion on "fast-paced, high production, or frequent changes in tasks, expectations, or locations," the greeter position would be eliminated but the job numbers would remain unchanged (Tr. 78).

The VE testified further that the need to take unscheduled breaks or miss two to three days of work each month would eliminate all competitive employment (Tr. 78). The VE stated that her testimony was based on the information found in the *Dictionary of Occupational Titles* ("*DOT*"), except for the testimony regarding work absences and the use of the non-dominant hand which was based on her own professional experience (Tr. 79).

In response to questioning by Plaintiff's counsel, the VE testified that the inability to perform repetitive tasks with the right hand would preclude the light job findings but would

---

frequent lifting or carrying of objects weighing up to 50 pounds.

not affect the sedentary positions (Tr. 79). She stated that the inability to perform repetitive activity with either hand would eliminate all of the above-cited jobs (Tr. 80). She stated that the need to be off task for 20 minutes at a time due to medication side effects would eliminate all work (Tr. 80). The VE stated that she had placed clients in one-handed sorting and inspection positions but that such individuals were still subject to production standards or quotas (Tr. 80-81).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ determined that Plaintiff experienced the severe impairments of "contracture, left middle finger; and asthma" but found that neither of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels subject to the following restrictions:

> [W]ould need a clean air environment free from concentrated levels of dust, fumes, chemicals, gases, or other airborne irritants; and could only use the left non-dominant hand as an assist with no gripping, handling, or fingering with the left hand (Tr. 13).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the exertionally sedentary jobs of inspector, sorter, and packer, and light jobs of greeter, inspector, and sorter (Tr. 19, 77).

The ALJ discounted Plaintiff's allegations of disability. She noted that as of September, 2014, Plaintiff reported level "one" pain on a one to ten scale (Tr. 15). She cited Dr. Rehman's records noting that Plaintiff was ambivalent about additional surgery (Tr. 15). She rejected claims of right limitations, noting that the records did not "support any limitation with regard to the use of the . . . right hand" (Tr. 16). She noted that subsequent to September, 2014, the records did not show any reports of right hand problems (Tr. 16).

He noted that the examination records showed normal right hand functioning (Tr. 16). She observed that while Plaintiff testified that she took pain medication multiple times a day, she reported to Dr. Rehman in November and December, 2015 that she took pain medication around three times a week (Tr. 16). The ALJ also noted that Plaintiff had been non-compliant with physical therapy and a home exercise program following the 2014 procedures (Tr. 17).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Hypothetical Question and RFC

Plaintiff contends that the hypothetical question to the VE forming the basis of the RFC found in the administrative determination does not reflect her alleged right hand limitations.  *Plaintiff's Brief* at 4 of 19, *Docket #16,* Pg ID 622.

Plaintiff is correct that a hypothetical question forming the basis of the RFC found in the administrative opinion constitutes substantial evidence only if it accurately reflects the claimant's physical and mental impairments.  *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir. 2010).  While the Sixth Circuit has rejected the proposition that all of the claimant's maladies must be listed verbatim, "[t]he hypothetical question ... should include an accurate

portrayal of [a claimant's] physical and mental impairments." *Webb v. Commissioner of Social Sec.,* 368 F.3d 629, 632 (6th Cir.2004). It is well settled that vocational testimony given in response to a question that does include all of a claimant's relevant limitations does not constitute substantial evidence. *Varley v. Commissioner of Health and Human Servces,* 820 F.2d 777, 779 (6th Cir. 1987).

To be sure, Plaintiff testified that along with significant left hand limitations, she also experienced some degree of right hand difficulty, noting both in her testimony and functional report that her right thumb locked (Tr. 68-69, 262). The RFC found in the administrative opinion restricts left hand use to an "assist" to the right hand with no "gripping, handling, or fingering" with the left hand but does not include any limitations on right hand use (Tr. 13).

However, the absence of right-sided limitation from the RFC is well explained and supported. The ALJ acknowledged Plaintiff's allegations of "pain in both hands" with bilateral thumb locking (Tr. 14). However, the ALJ explicitly rejected the claims of right hand limitations, noting the medical records did not "support any limitation with regard to the use of [the] dominant right hand" (Tr. 16). She noted that while on one occasion Plaintiff reported tenderness and a nodule of the right thumb, she demonstrated a normal range of right-sided motion with normal motor and sensory function (Tr. 16). The ALJ cited Dr. Rojas' consultative finding of normal right upper extremity functioning (Tr. 16, 517-523). The ALJ noted that Plaintiff did not seek treatment for right hand problems and did not report right hand problems the following year to Dr. Rehman (Tr. 16). The ALJ's rationale for declining to include right hand limitations in either the hypothetical question to the VE or RFC is consistent with my own review of the record showing that aside from one report of the condition in September, 2014, Plaintiff did not seek treatment for the alleged right-sided limitations. As such, the ALJ's finding that the hand restrictions were limited to the left does

not provide grounds for remand. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994)(ALJ not required to incorporate unsubstantiated claims in hypothetical question to VE or by extension, the ultimate RFC). The case for remand is further weakened by the fact that the VE testified that a preclusion on "forceful gripping or twisting" with the right hand would not change the job numbers (Tr. 77-78). Although the gripping and twisting limitations were not included in the RFC, the addition of such limitations would not have changed the Step Five finding that Plaintiff could perform a significant range of work.

### B. An Additional Consultative Examination is Not Warranted

Citing 20 C.F.R. § 404. 1519a, Plaintiff also argues that the ALJ ought to have obtained a consultative evaluation by a hand surgeon to properly assess the allegations of bilateral hand pain. *Plaintiff's Brief* at 17-19.

Under § 404.1519a(a) "If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination." "Situations that may require a consultative examination" include the need to "resolve an inconsistency in the evidence," insufficient evidence, the inability to obtain treating records, and "specialized medical evidence" that is not otherwise available. *Id.* at 404.1519a(b)(1-4).

Plaintiff cannot show that any of the above scenarios apply to this case. She does not argue that inconsistencies in the record require resolution or that the treating records are inadequate to appraise her condition. She has already undergone one consultative examination which included an examination of both upper extremities. While Plaintiff argues that she requires a consultative examination by a hand surgeon in addition to Dr. Rojas' examination, the record already includes extensive treatment records by two surgeons, one of whom is a hand surgeon. Notably, the hand surgeon, Dr. Williams, found in

September, 2014 that Plaintiff had "no work restrictions" (Tr. 452). Likewise, Dr. Rehman's November and December, 2015, records note that despite Plaintiff's allegations of "mild to moderate" interference with activities due to left hand problems, she took pain relievers only three times each week on an "as needed" basis (Tr. 525). While Plaintiff testified to the need for pain medication multiple times each day with the side effect of drowsiness, April, 2017 treating records note Plaintiff's denial of problems with sleeping or fatigue (Tr. 74, 573). Accordingly, Plaintiff has not made the case for the need for another consultative examination. "Although under certain conditions the Secretary may order and pay for a consultative examination, he is not required to do so if the record contains sufficient evidence upon which to base a disability determination." *Brown v. Bowen*, 739 F.Supp. 1129, 1130 (N.D.Ohio 1990) (emphasis in original) *(citing Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211 (6th Cir.1986). In this case, the record contains "sufficient" if not ample evidence upon which to make the non-disability determination.

In closing, my recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's legitimate left hand limitations as reflected by the record. Nonetheless, because the ALJ's findings are well within the "zone of choice" accorded the administrative fact-finder, they should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [Docket #19] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #16] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                            s/R. Steven Whalen
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE

Dated: August 20, 2019